## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARK A. GOSSETT, SANDRA ROMAN, TELIA P. WILSON, TIMIKII COBURN, ANTONIA MORALES, ANTONIO MUNOZ, JESSE LOFTON, DAVID Z. LEON, KEVIN M. JACKSON, and LORENZO ESCAMILLA, JR., on behalf of themselves and all other persons similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>TREASURE ISLAND FOODS, INC., TREASURE ISLAND FOODS MONTROSE CORP., THE MAGAZI, INC., PATRICK CAVANAUGH, individually, MARIA KAMBEROS, individually, and CHRIST KAMBEROS, individually,<br><br>        Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Mark A. Gossett, Sandra Roman, Telia P. Wilson, Timikii Coburn, Antonia Morales, Antonio Munoz, Jesse Lofton, David Z. Leon, Lorenzo Escamilla, Jr., and Kevin M. Jackson, on their own behalf and on behalf of all others similarly situated, through their attorneys, for their Class Action Complaint against Defendants Treasure Island Foods, Inc. ("Treasure Island"), Treasure Island Foods Montrose Corp. ("Treasure Montrose"), The Magazi, Inc. ("Magazi"), Patrick Cavanaugh, individually, and in his capacity as Trustee-Assignee for Treasure Island Foods, Inc. ("Cavanaugh"), Maria Kamberos, and Christ Kamberos, individually (collectively referred to as "Defendants"), state as follows:

## NATURE OF THE CASE

1.      This lawsuit arises as a class action under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN") and the Illinois Worker

Adjustment and Retraining Notification Act, 820 ILCS 65/1 *et seq.* ("IWARN") based on Defendants' failure to provide notice of mass layoff or plant closing; and also under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA") for the Defendants' failure to include accrued and due compensation in employees' final compensation.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' WARN claim pursuant to 29 U.S.C. § 2104(a)(5) and 28 U.S.C. § 1331 and 1337, and because the Defendants reside in this District.

3.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this judicial district because Defendants' place of business is located within this judicial district and the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

5.     The Named Plaintiffs Gossett, Roman, Wilson, Coburn, Morales, Munoz, Lofton, Leon, Jackson, and Escamillo are residents of this District and were employees at Retail Stores during the time period at issue in this case.

6.     The Named Plaintiffs and putative Class Members of the WARN and IWARN classes that they seek to represent are current and former employees of the Defendants who were subject to plant closings and/or a mass layoff, and who were not provided with the requisite notice under WARN and/or IWARN.

7.     The Named Plaintiffs and putative Class Members of the IWPCA class that they seek to represent are former employees of the Defendants who were not timely provided with their full earned wages, including accrued but unused PTO, as part of their final compensation from the

2

Defendants.

8.     During the relevant statutory periods, each of the Named Plaintiffs and members of all putative classes were employed by Defendants as "employees" under WARN, IWARN, and the IWPCA.

9.     Defendants Treasure Island, Treasure Montrose, and Magazi (a subset of the Defendants referred to herein as the "corporate Defendants") are Illinois corporations engaged in the business of operating grocery stores serving Chicagoland communities for the last fifty or more years.   On information and belief, the corporate Defendants operate stores at the following seven locations: 3640 N. Broadway, Chicago, Illinois; 2121 N. Clybourn Avenue, Chicago, Illinois; 75 West Elm Street, Chicago, Illinois; 1526 E. 55th Street, Chicago, Illinois; 680 N. Lake Shore Drive, Chicago, Illinois; 1639 N. Wells Street, Chicago, Illinois; and 911 Ridge Road, Wilmette, Illinois (collectively referred to as "Retail Stores").

10.     Defendant Maria Kamberos is President of Defendants Treasure Island, Treasure Montrose, and Magazi and on information and belief, is a common owner of the corporate Defendants and other related affiliates and enterprises.   Maria Kamberos controls the day-to-day operations of the Retail Stores and made decisions with respect to the Defendants' financial operations, including Plaintiffs' compensation and the decision to close operations and terminate employees.   Maria Kamberos had the authority to, and did, hire and fire employees; direct and supervise the work of employees; sign on Defendants' checking accounts, including payroll accounts; and make or participate in decisions regarding employee compensation.

11.     Defendant Christ Kamberos is the son of Maria Kamberos and, on information and belief, is an officer and Director of the Corporate Defendants.   Christ Kamberos directed the corporate Defendants' financial operations, making day-to-day decisions regarding the Retail

Stores with respect to finances.   Christ Kamberos had the authority to, and did, hire and fire employees; direct and supervise the work of employees; sign on Defendants' checking accounts, including payroll accounts; and make or participate in decisions regarding employee compensation.

12.     On information and belief, Defendant Cavanaugh accepted appointment as Trustee-Assignee of the corporate Defendants, including all assets of the Retail Stores pursuant to an assignment for the benefit of creditors.   On or after September 26, 2018, Cavanaugh controlled the day-to-day operations of the Retail Stores, including financial decisions.   Cavanaugh continued the Retail Stores' business operations as a successor to the corporate Defendants failing to comply with WARN, IWARN, and the IWPCA in violation of federal and state law.

13.     At all times, Defendants were Plaintiffs' and the Plaintiff Classes' "employers" within the meaning of the IWPCA, WARN, and IWARN.

14.     At all times relevant to this case, Defendants employed 100 or more employees, not counting employees who have worked less than 6 months in the last 12 months and not counting employees who work an average of less than 20 hours per week.

## FACTS COMMON TO ALL COUNTS

15.     The Defendants' seven Retail Stores permanently closed during the 14-day period beginning on October 12, 2018.

16.     On or around September 26, 2018, less than sixty (6) days prior to closing all Retail Stores, Defendants issued a notice to employees explaining that their Retail Stores would be permanently closing.

17.     In part, the notice to employees read: "As a result of the difficult business decision, we will immediately begin the process of separating employees now and others will be affected in various stages until the closing date.   Given that all of our employee are affected, there are no

bumping or transfer rights available."   See 9/26/18 letter, attached as **Exhibit A**.

18.     On or about February 8, 2018, Defendants hired Gossett to work in the Deli Department at the Retail Store located at 2121 North Clybourn Street, Chicago, IL.   On September 29, 2018, his last day, he received the September 26, 2018 letter attached as Exhibit A.

19.     In April 1996, Defendants hired Roman as a scan coordinator to work at the Retail Store located at 1639 N. Wells Street, Chicago, IL.   Thereafter, Defendants transferred her to other locations and on August 10, 2018, transferred her from the 2121 North Clybourn store to the Hyde Park store.   Her last day was September 28, 2018, on which date Defendants told her that the stores were closing and provided her with the September 26, 2018 letter attached as Exhibit A.

20.     On or about April 13, 2018, Defendants hired Wilson for work as a cashier and in the Floral Department at the Retail Store located at 1526 E. 55th Street, Chicago, IL.   Her last day was September 30, 2018, on which date Defendants told her that the stores were closing and provided her with the September 26, 2018 letter attached as Exhibit A.

21.     In March 2008, Defendants hired Coburn to work as a cashier at the Retail Store located at 1526 E. 55th Street, Chicago, IL.   Her last day was October 7, 2018.   On September 30, 2018, she received the September 26, 2018 notice that the Defendants were closing, attached as Exhibit A.

22.     In March 2004, Defendants hired Morales as a clerk in the Deli at the Retail Store located at 2121 N. Clybourn, Chicago, IL.   Defendants transferred Morales to the Retail Store at 1639 N. Wells Street, Chicago, IL.   Her last day was October 6, 2018, on which date Defendants told her that the stores were closing and provided her with the September 26, 2018 letter attached as Exhibit A.

23.     In June 2001, Defendants hired Munoz to work at the Retail Store located at 680

North Lake Shore Drive, Chicago, IL. His last day was September 29, 2018, on which date Defendants told him that the stores were closing and provided him with the September 26, 2018 letter attached as Exhibit A.

24. In August 2000, Defendants hired Lofton to work at the Retail Store located at 680 North Lake Shore Drive, Chicago, IL. His last day was October 8, 2018, on which date Defendants told him that the stores were closing and provided him with the September 26, 2018 letter attached as Exhibit A.

25. In June 2016, Defendants hired Leon to work in the Deli Department at the Retail Store located at 680 North Lake Shore Drive, Chicago, IL. His last day was October 8, 2018, on which date Defendants told him that the stores were closing and provided him with the September 26, 2018 letter attached as Exhibit A.

26. In July 2009, Defendants hired Jackson to work as a floor clerk and floral assistant manager at the Retail Store located at 1526 E. 55th Street, Chicago, IL. His last day was September 29, 2018, on which date Defendants told him that the stores were closing and provided him with the September 26, 2018 letter attached as Exhibit A.

27. In November 2017, Defendants hired Escamilla to work in the Produce Department at the Retail Store located at 1526 E. 55th Street, Chicago, IL. His last day of work was October 9, 2018. On October 4, 2018, he received the September 26, 2018 letter attached as Exhibit A.

28. None of the Named Plaintiffs or members of the putative WARN and/or IWARN classes received at least 60 days' notice of the Defendants plant closing and/or mass layoff.

29. None of the Named Plaintiffs or members of the putative WARN and/or IWARN classes received compensation for the 60-day notice period that should have been paid under WARN and/or IWARN.

6

30.     On information and belief, the corporate Defendants Treasure Island, Treasure Montrose, and Magazi operated the Retail Stores as a single employer from a central location in the Retail Store at 3640 N. Broadway Street, Chicago, IL, which was known as the "Corporate Office."

31.     At the Corporate Office, the Defendants managed the Retail Stores by preparing payroll & related services and offering and coordinating employee benefits to all employees working at each Retail Stores.

32.     On information and belief, Defendants centralized control of their inventory purchases for the Retail Stores at the Corporate Office.

33.     By conducting business using the purchase power of many Retail Stores which were serviced by the identical administrative staff, the Defendants operated their interrelated businesses as a single joint employer and are jointly and severally liable for the violations under the law as alleged in this Complaint.

34.     The Defendants provided all their Retail Stores employees with identical benefits, including a health plan policy and Paid Time Off (PTO).

35.     All Retail Store Employees of the Defendants accrued paid PTO based on the number of hours worked.   The Company limited employees to using their PTO during the time periods outside of November through the first week in January.

36.     Most, if not all, employees who were subject to the plant closing and/or mass layoff on and following September 26, 2018, had accrued but had not used all of their PTO at the time of their separation.

37.     Retail Store employees, including the Named Plaintiffs and all members of the putative IWPCA class, who received their final compensation from the Company were not paid their accrued but unused PTO in the final compensation distributed by the Company.

7

38.     The Individual Defendants had knowledge and control over the Named Plaintiffs'

and putative Class Members' final compensation, and knowingly or recklessly failed to pay them

all final compensation due to them under the IWPCA.

## CLASS ALLEGATIONS

39.     The Named Plaintiffs bring this action on behalf of themselves and all putative

members of the Plaintiff Classes (which includes putative Classes A-C as defined herein).

40.     With respect to WARN and IWARN violations, the Named Plaintiffs represent, and

are members of, the putative Class A and Class B (the "WARN Class" and "IWARN Class"

respectively) defined as follows:

> "All employees who (1) worked at one of Defendants' Retail Stores and (2) were
> terminated within 30 days of September 26, 2018, or (3) were terminated as the
> reasonably foreseeable consequence of the plant closing and/or mass layoffs by
> Defendants on or about September 26, 2018, who (4) are affected employees within
> the meaning of 29 U.S.C. § 2101(a)(5), who (5) did not receive at least 60 days prior
> notice of the plant closing and/or mass layoff."

41.     With respect to the IWPCA violations, the Named Plaintiffs represent, and are

members of, the putative Class C (the "IWPCA Class") defined as follows:

> "All persons within the state of Illinois who (1) were employed by Defendants; (2)
> earned and accrued vacation and/or sick time as Paid Time Off (PTO) during their
> employment; (3) had accrued but unused PTO remaining at the time that (4) their
> employment with Defendants ended, and who (5) were not paid their accrued but
> unused PTO as part of their final compensation from the Defendants."

42.     The Named Plaintiffs do not know with certainty the number of members in each of

the Plaintiff Classes A-C at this time, but reasonably estimate that putative Classes A-C each include

approximately 400 individuals.    Thus, this matter should be certified as a Class Action to assist in

the expedition litigation of this matter.

43.     This action is brought as a class action under Fed. R. Civ. P. 23 because the Plaintiff

Classes A-C are so numerous that joinder of all class members is impracticable.

44.     The Named Plaintiffs and members of the WARN and IWARN classes were harmed by acts of the Defendants when they were terminated and suffered an employment loss due to the Defendants' plant closing and/or mass layoff, without requisite notice.    Common questions of law and fact include but are not limited to the following:

a.     Whether the members of the WARN and/or IWARN classes were employees of the Defendants who worked at or reported to Defendants' facilities;

b.     Whether Defendants unlawfully terminated the employment of the members of the WARN and/or IWARN classes without casue on their part and without giving them 60 days advance written notice, in violation of WARN and/or IWARN; and

c.     Whether Defendants unlawfully failed to pay the WARN and/or IWARN class members 60 days wages and benefits as required by WARN and IWARN.

45.     The Named Plaintiffs and members of the IWPCA class were harmed by the Defendants when they were not provided with payment of their accrued but unused PTO as part of their final compensation.    Common questions of law and fact include but are not limited to the following:

d.     Whether members of the IWPCA class accrued but did not use PTO as of the time of their termination; and

e.     Whether Defendants properly compensated members of the IWPCA class when providing their final compensation, including whether Defendants provided members of the IWPCA class with the full amount of their accrued but unused PTO.

46.     The Plaintiff Class members may be reluctant to raise individual claims for fear of retaliation, or for fear that bringing an individual claim against a former employer may hinder their ability to find new employment.

47.     This class action suit seeks only damages and any other relief permitted under WARN, IWARN, and IWPCA.    The Named Plaintiffs reserve the right to expand, combine, or

subdivide the Class definitions as warranted, as facts are learned in further investigation and discovery.

48.     The issues involved in this lawsuit present common questions of law and fact, which predominate over any variations that may exist between members of the class.

49.     The Named Plaintiffs, putative members of Classes A-C, and Defendants have a commonality of interest in the subject matter and remedy sought.

50.     The Named Plaintiffs are able to fairly and adequately represent and protect the interests of the Plaintiff Classes A-C, and Defendants have no defenses unique to the Named Plaintiffs.

51.     The Named Plaintiffs' Counsel is competent and experienced in class and complex litigation.

52.     If individual actions were required to be brought by each member of the Classes A-C affected, the result would be a multiplicity of actions, creating a hardship to the Plaintiff Classes, to the Court, and to the Defendants.   Accordingly, a class action is not only appropriate, but the superior method for the fair and efficient adjudication of this controversy.   Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

53.     Defendants have acted on grounds generally applicable to each of the Plaintiff Classes A-C, thereby making appropriate final relief with respect to the Plaintiffs Classes A-C as a whole.

**COUNT I**
**FEDERAL WARN ACT CLAIM**
**(Class Action against all Corporate Defendants)**

54.      The Named Plaintiffs incorporate the above paragraphs as though fully set forth herein.

10

55.     This Count arises from Defendants violation of the federal WARN Act, 29 U.S.C. §
2101 *et seq.*, as a result of the mass layoffs or plant closings by Defendants following September
26, 2018, for which Defendants did not provide their employees 60 days advance written notice of
their terminations as required by law.

56.     At all relevant times, the Corporate Defendants were "employers" as defined by the
WARN Act, 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business
until they decided to order a mass layoff or plant closing as described in the letter attached as Exhibit
A.

57.     Prior to its closure and mass layoff of employees, the corporate Defendants
employed more than 100 employees in their Retail Stores and/or had 100 or more employees who
in the aggregate worked at least 4,000 hours per week exclusive of overtime.

58.     On or around September 26, 2018 Defendants provided correspondence attached as
Exhibit A to employees, explaining that Defendants would permanently close their Retail Stores,
and that their employment was being terminated between September 26 and the closing date of their
respective Retail Store.

59.     Defendants' Retail Store closing, as detailed in the letter attached as Exhibit A,
constitutes a "plant closing" and/or "mass layoff" as defined by WARN, 29 U.S.C. § 2010(a)(2),
(3).

60.     The mass layoff or plant closing resulted in "employment losses," as that term is
defined by 29 U.S.C. § 2010(a)(2) for at least fifty of Defendants' employees as well as 33% of
Defendants' workforce, excluding "part time employees" as that term is defined by 29 U.S.C. §
2101(a)(8).

61.     The Named Plaintiffs and WARN Class members were terminated by Defendants

11

without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closing by Defendants.

62.     On information and belief, more than 400 employees were terminated from Defendants' Retail Stores, including the Named Plaintiffs and members of the WARN class, were "affected employees" as defined by 29 U.S.C. § 2101(a)(5).

63.     Defendants were required by WARN to give the Named Plaintiffs and WARN class members at least 60 days advance written notice of their terminations.

64.     Defendants failed to provide the Named Plaintiffs and all members of the WARN class the 60-day notice period required before plant closings and mass layoffs prior to laying off or terminating employees.

65.     Defendants failed to pay the Named Plaintiffs and each member of the WARN class their respective wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, and/or accrued PTO for 60 days following their respective terminations.

66.     Upon information and belief, Defendants failed to make pension and 401(k) contributions and provide employee benefits for 60 days from and after the dates of the Named Plaintiffs' and the WARN class members' terminations.

67.     Defendants' failure to give the Named Plaintiffs and all members of the WARN class at least sixty (60) days prior written notice of termination as a result of its closing of Defendants' Retail Stores and the consequent termination of its "affected employees" constitutes a violation of the provisions of WARN, 29 U.S.C. § 2101, *et seq.*

68.     Defendants have failed and refused to pay the Named Plaintiffs and all members of the WARN class the amount of pay and benefits owed to them under WARN.

69.     Defendants have willfully violated the WARN Act.   On information and belief,

Defendants had advance notice of the need to shut down the Retail Stores.

70.    By failing to provide statutory notice, Defendants willfully violated WARN, 29 U.S.C. § 2101 *et seq.*

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all other similarly situated individuals known and unknown, respectfully request that this Court enter an order as follows:

a.    Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3)

b.    Appointing Named Plaintiffs as Class Representatives and their Counsel as Class Counsel

c.    Awarding judgement in an amount equal to all unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, accrued PTO, pension and 401(k) contributions, and other benefits which should have been paid during the 60 days after notice of termination under WARN.

d.    Awarding the maximum amount of any civil penalty available under WARN;

e.    Awarding reasonable attorneys' fees and costs incurred in filing this action; and

f.    Ordering such other and further relief as this Court deems appropriate and just.

## COUNT II
## ILLINOIS WARN ACT CLAIM
### (Class Action against all Corporate Defendants)

71.    The Named Plaintiffs incorporate the above paragraphs as though fully set forth herein.

72.    This Count arises from Defendants violation of the Illinois state WARN Act, 820 ILCS 65/5 *et seq.*, as a result of the mass layoffs or plant closings by Defendants following September 26, 2018, for which Defendants did not provide their employees 60 days advance written notice of their terminations as required by law.

73.     At all relevant times, the Corporate Defendants were "employers" as defined by IWARN, 820 ILCS 65/5(c) and continued to operate as a business until they decided to order a mass layoff or plant closing as described in the letter attached as Exhibit A.

74.     Prior to its closure and mass layoff of employees, the corporate Defendants employed more than 75 employees in their Retail Stores and/or had 75 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of overtime.

75.     On or around September 26, 2018 Defendants provided correspondence attached as Exhibit A to employees, explaining that Defendants would permanently close their Retail Stores, and that their employment was being terminated between September 26 and the closing date of their respective Retail Store.

76.     Defendants' Retail Store closing, as detailed in the letter attached as Exhibit A, constitutes a "plant closing" and/or "mass layoff" as defined by IWARN, 820 ILCS § 65/5(f), (d).

77.     The mass layoff or plant closing resulted in "employment losses," as that term is defined by 820 ILCS 65/5(b) for at least 50% of Defendants' workforce during a 6-month period.

78.     The Named Plaintiffs and IWARN Class members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff or plant closing by Defendants.

79.     On information and belief, more than 400 employees were terminated from Defendants' Retail Stores, including the Named Plaintiffs and members of the WARN class, were "affected employees" as defined by 820 ILCS 65/5(a).

80.     Defendants were required by IWARN to give the Named Plaintiffs and IWARN class members at least 60 days advance written notice of their terminations.    820 ILCS 65/10.

81.     Defendants failed to provide the Named Plaintiffs and all members of the IWARN

14

class the 60-day notice period required before plant closings and mass layoffs prior to laying off or terminating employees.

82.     Defendants failed to pay the Named Plaintiffs and each member of the IWARN class their respective wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, and/or accrued PTO for 60 days following their respective terminations.

83.     Upon information and belief, Defendants failed to make pension and 401(k) contributions and provide employee benefits for 60 days from and after the dates of the Named Plaintiffs' and the IWARN class members' terminations.

84.     Defendants' failure to give the Named Plaintiffs and all members of the IWARN class at least sixty (60) days prior written notice of termination as a result of its closing of Defendants' Retail Stores and the consequent termination of its "affected employees" constitutes a violation of the provisions of IWARN, 820 ILCS 65/5, *et seq.*

85.     Defendants have failed and refused to pay the Named Plaintiffs and all members of the IWARN class the amount of pay and benefits owed to them under IWARN.

86.     Defendants have willfully violated the IWARN Act.   On information and belief, Defendants had advance notice of the need to shut down the Retail Stores.

87.     By failing to provide statutory notice, Defendants willfully violated IWARN, 820 ILCS 65/5 *et seq.*

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all other similarly situated individuals known and unknown, respectfully request that this Court enter an order as follows:

a.     Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3)

b.     Appointing Named Plaintiffs as Class Representatives and their Counsel as Class Counsel

c.     Awarding judgement in an amount equal to all unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, accrued PTO, pension and 401(k) contributions, and other benefits which should have been paid during the 60 days after notice of termination under IWARN;

d.     Awarding the maximum amount of any civil penalty available under IWARN;

e.     Awarding reasonable attorneys' fees and costs incurred in filing this action; and

f.     Ordering such other and further relief as this Court deems appropriate and just.

**COUNT III**
**VIOLATION OF THE IWPCA**
**(Class Action against all Corporate and Individual Defendants)**

88.     Plaintiffs incorporate the above paragraphs as though fully set forth herein.

89.     The individual Defendants are "employers" as defined by the IWCPA, 820 ILCS 115/2.

90.     Pursuant to the IWPCA, employers are required to pay employees all final compensation – including earned wages and accrued but unused vacation time – in full at the time of the employees' termination or no later than the employer's next regular payday.    830 ILCS 115/5.

91.     As described above, Defendants failed to provide the Named Plaintiffs and members of the IWPCA class with their accrued but unused PTO as part of their final compensation.

92.     Defendants violated the IWPCA by failing to properly and timely compensate the Named Plaintiffs and members of the IWPCA class their full final compensation as required by the Act.

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all other similarly situated individuals known and unknown, respectfully request that this Court enter an order as

follows:

    a.      Determining that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3)

    b.      Appointing Named Plaintiffs as Class Representatives and their Counsel as Class Counsel

    c.      Awarding judgement in an amount equal to all unpaid wages owed to the Named Plaintiffs and all others similarly situated pursuant to the IWPCA;

    d.      Awarding prejudgment interest on the unpaid wages;

    e.      Awarding statutory damages pursuant to the formula set forth in 820 ILCS § 115/14(a);

    f.      Awarding reasonable attorneys' fees and costs pursuant to 820 ILCS 115/14(a); and

    g.      Ordering such other and further relief as this Court deems appropriate and just.


Dated: October 11, 2018                Respectfully submitted,

Karen I. Engelhardt               MARK A. GOSSETT, SANDRA ROMAN,
Sara S. Schumann                 TELIA P. WILSON, TIMIKII COBURN,
Ryan M. Thoma                  ANTONIA MORALES, ANTONIO
ALLISON, SLUTSKY & KENNEDY, P.C.    MUNOZ, JESSE LOFTON, DAVID Z.
230 W. Monroe Street, Suite 2600       LEON, KEVIN M. JACKSON, and
Chicago, Illinois 60606              LORENZO ESCAMILLA, JR., on behalf of
Tel. (312) 364-9400               themselves and all other persons similarly
Fax: (312) 364-9410               situated,

Alejandro Caffarelli, #06239078      By:  _/s/ Karen I. Engelhardt_
Lorrie T. Peeters, #6290434           Attorney for Plaintiffs
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880